# United States District Court
# Central District of California

JAMES RUTHERFORD,

          Plaintiff,

   v.

JJ'S MARKET AND LIQUOR; et al.,

          Defendants.

Case No. 5:18-cv-02656-ODW (SHKx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [45]**

## I.    INTRODUCTION

Plaintiff James Rutherford ("Rutherford") moves for an entry of default judgment against Talat Radwan and Natasha Radwan, owners of the property in question, and JJ's Market and Liquor, a retail establishment (collectively, "Defendants").   (Mot. for Default J. ("Mot.") 1, ECF No. 45-2.)   For the reasons discussed below, the Court **GRANTS** Rutherford's Motion for Default Judgment ("Motion").[1]

## II.    FACTUAL BACKGROUND

On December 26, 2018, Rutherford initiated this action against Defendants. (First Am. Compl. ("FAC") ¶ 1, ECF No. 17.)   There are two claims that arise from

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

Rutherford's visit to Defendants' property in or about August 2018: (1) Violations of Title III of the Americans with Disabilities Act ("ADA"), claiming, a) that the accessible parking spaces are not located on the shortest accessible route to the entrance in violation of ADA Accessibility Guideline ("AGAAG") § 208.3.1, and b) that the "curb ramp" at the accessible parking spaces projects into the "access aisle" in violation of § 406.5; and (2) violation of the Unruh Civil Rights Act ("Unruh") premised on the ADA violations.   (FAC ¶¶ 15, 29–34, 35–38.)   This Court declined to exercise supplemental jurisdiction over Rutherford's Unruh state law claim; thus, the claim was dismissed without prejudice.  (Order Declining Suppl. Jurisdiction ("Order Declining") 5, ECF No. 39.)

On April 23, 2019, Defendants were served the Summons and Complaint.  (Proof of Service of Summons ("Proof of Service"), ECF No. 12.)   Defendants failed to respond to the Summons and Complaint and on November 4, 2019, Plaintiffs filed a Request for Entry of Default.  (Mot. for Clerk to Enter Default ("Mot. Clerk Enter Default"), ECF No. 40.)  Two days later, the Clerk of Court entered Default.  (Clerks Entry of Default, ECF No. 41.)  On December 6, 2019, Rutherford filed a Motion for Default Judgment.  (Mot. 1.)

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to grant default judgment after the Clerk enters default under 55(a).  Fed. R. Civ. P. 55(b). Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirement set forth in FRCP 54(c) and 55, as well as Local Rule 55-1. Fed. R. Civ. P. 54(c), 55; C.D. Cal. L.R. 55-1.  Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the

defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to grant a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However, "a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). In exercising its discretion, a court considers several factors ("*Eitel* Factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-71 (9th. Cir. 1986). Generally, upon entry of default by the Clerk, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to the amount of damages. *Televideo Sys.*, *Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

A party who has violated the ADA is liable for attorneys' fees and costs under 42 U.S.C. § 12205. Where, on motion for default judgment, a party seeks attorney fees and costs pursuant to a statute, those fees are calculated in accordance with the schedule provided by the Court. C.D. Cal. L.R. 55-3. A court may award attorney fees in excess of the schedule when the attorney makes a request at the time of the entry of default. *Id*.

## IV.    DISCUSSION

### A.    Procedural Requirements

Rutherford has satisfied the procedural requirements for an entry of default judgment. Rutherford has submitted a declaration stating: (1) the Clerk entered default against Defendant on November 6, 2019; (2) default was entered based on the First

Amended Complaint Rutherford filed on April 1, 2019; (3) Defendants are neither infants nor incompetent; (4) Defendants are not covered under the Servicemember Civil Relief Act, 50 U.S.C. § 3931, and (5) Rutherford properly served Defendants with notice of this Motion through the United States Postal Service. (Decl. of Joseph R. Manning ("Manning Decl.") ¶¶ 2–5, ECF No. 45-3; Mot. 6; Notice of Motion 2, ECF No. 45.) Thus, Rutherford has satisfied the procedural requirements of FRCP 54(c) and 55, as well as Local Rule 55-1.

## B. *Eitel* Factors

Once the procedural requirements have been met, district courts must consider the *Eitel* Factors in exercising discretion for granting default judgment. For the reasons discussed below, the Court finds that the factors weigh in favor of granting default judgment.

### 1. *Possibility of Prejudice to the Plaintiff*

The first *Eitel* Factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default judgment leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendants elected not to participate in this action after being properly notified. (Proof of Service of Mot., ECF No. 45-9.) Absent a default judgment, Plaintiff would have no further recourse to recover against Defendants' ADA violations. Therefore, this factor weighs in favor of default judgment.

### 2. *Substantive Merits & 3. Sufficiency of the Complaint*

The second and third *Eitel* Factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (citing *PepsiCo*, 238 F. Supp. 2d at 1175.) Although well-pleaded allegations in the complaint are admitted by the defendant's failure to respond, "necessary facts not contained in the pleadings, and

claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Here, Rutherford alleges claims for violations of both the ADA and Unruh.

a. *ADA Claims*

Rutherford alleges claims sufficient to establish that Defendants violated Title III of the ADA, which prohibits acts of discrimination "on the basis of disability the full and equal enjoyment of . . . services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a).

To succeed in his claim, Rutherford must establish that: (1) he is "disabled within the meaning of the ADA," (2) Defendants are a "private entity that owns, leases, or operates a place of public accommodation," (3) Defendants denied Rutherford public accommodation because of his disability, (4) the parking spaces in question "present[] an architectural barrier prohibited under the ADA," and (5) "the removal of the barrier is readily achievable." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007–08 (C.D. Cal. 2014) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)).

First, "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA lists walking and standing as "Major Life Activities." 42 U.S.C. § 12102(2)(A). Rutherford asserts that he is "substantially limited" in walking and standing, among other things. (FAC ¶ 1.) Thus, accepting this allegation as true, Rutherford has sufficiently established that he is disabled under the ADA.

Second, the ADA lists "private entities" such as "sales . . . establishments" as "public accommodations." 42 U.S.C. § 12181(7)(E). Private entities that own, lease, or lease to others, property, must comply with the ADA. 42 U.S.C. § 12182(a). Here, Rutherford alleges that all Defendants either "owned, operated [or] controlled" the business or property where the parking spaces in question are located. (FAC ¶¶ 3–6.)

Thus, taking these allegations as true, Rutherford has sufficiently alleged that Defendants collectively own, lease, or operate a public accommodation.

As to factors three and four, "[a] public accommodation shall maintain . . . facilities . . . that are required to be readily accessible to and usable by persons with disabilities. . . ." 28 C.F.R § 36.211(a). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG')." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d at 945 (9th Cir. 2011). The ADAAG guidelines "lay out the technical structural requirements of places of public accommodation." *Id.* (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir. 2004).

For Example, "[w]here [accessible] parking spaces are provided, [they] shall be provided in accordance with 208." ADAAG § 208.1 (2010), https://www.ada.gov/r egs2010/2010ADAStandards/2010ADAStandards_prt.pdf. "[Accessible] parking spaces . . . that serve a particular building . . . shall be located on the shortest accessible route from parking to an entrance . . . ." ADAAG § 208.3.1. Additionally, "[c]urb ramps . . . shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles." ADAAG § 406.5. Access aisles associated with accessible parking spaces must have slopes "not steeper that 1:48" in all directions. ADAAG § 406.5.

Here, Rutherford alleges that the "accessible parking spaces are not located on the shortest accessible route . . . ." (FAC ¶ 15.) Rutherford further alleges that "the curb ramp at the accessible parking spaces projects into the access aisles . . . ." (FAC ¶ 15.) Thus, taking these allegations as true, Rutherford has sufficiently alleged that the parking spaces are an architectural barrier that denied him public accommodation due to his disability.

Moreover, an ADA plaintiff who sufficiently alleges violations as to encountered barriers may also sue for injunctive relief as to unencountered barriers," provided that he plans on returning to the property in question but for the barriers. *Chapman*, 631

6

F.3d at 944.  Here, Rutherford alleges that access aisles associated with accessible parking spaces may not be in compliance with ADAAG § 502.4.  (FAC ¶¶ 15, 31.)  Thus, taking these allegations as true, Rutherford has sufficiently alleged that this barrier, along with the barriers discussed above, is deterring him from visiting the retail establishment located on Defendants' property, where he "intends to return."  (FAC ¶ 22.)

As to the fifth factor, "'[r]eadily achievable' means easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Although "readily achievable" requires fact-driven determinations such as the "nature and cost" of the repair, Rutherford did not receive any such information because Defendants failed to oppose this action.  (Mot. Clerk Enter Default.); *See Spikes v. Shockley*, No. 19-cv-523-DMS-JLB, 2019 WL 5578234, at *3 (C.D. Cal. Oct. 28, 2019).  Moreover, "installing ramps" and "creating designated accessible parking spaces"—both of which are related to, or part of, the injunctive relief Rutherford seeks—are considered examples of "readily achievable" removals of barriers under ADAAG.  *See* C.F.R § 36.304(b).  Furthermore, Rutherford alleges that the barriers are "easily removed without much expense," and therefore satisfies the "burden of production to present evidence that a suggested method of barrier removal is readily achievable."  (FAC ¶ 25); *Vogel*, 992 F. Supp. 2d at 1010–11 ("[Plaintiff's] allegation that removal of the barriers was readily achievable is sufficient to satisfy his burden of production.") (citing *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001).  Finally, Rutherford alleges that "there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable."  (FAC ¶ 25.)  Thus, taking his allegations as true, Rutherford has sufficiently alleged that the removal of Defendants' ADA violations is readily achievable.

### b. *Unruh Claim*

On April 1, 2019, this Court declined to exercise supplemental jurisdiction over Rutherford's state law claim and dismissed the claim. (Order Declining). Thus, the Court does not discuss the sufficiency of the state law claim.

### 4. *The Sum of Money at Stake*

The fourth *Eitel* Factor balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of the defendant's actions." *Truong Gian Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW 2007 WL 1545173, at * 12 (N.D. Cal. May 29, 2007). Here, the Court has declined to exercise supplemental jurisdiction over Rutherford's state law claim and the ADA offers only injunctive relief to remedy easily removable architectural barriers to access. Therefore, there are no monetary damages at stake. Thus, this factor weighs in favor of granting default judgment.

### 5. *Possibility of Dispute*

The fifth *Eitel* Factor considers the possibility of dispute regarding material facts. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, as Defendants failed to oppose the Motion, no factual dispute exists because the allegations in the Complaint are presumed true. *See*, *Vogel*, 992 F. Supp. 2d at 1013. Thus, this factor weighs in favor of default judgment.

### 6. *Possibility of Excusable Neglect*

The sixth *Eitel* Factor considers whether Defendants' default is the result of excusable neglect. *Eitel v. McCool*, 782 F.2d 1470. No facts before the Court indicate that Defendants' default is due to excusable neglect. Defendants were served a Summons and Complaint on April 23, 2019. (Proof of Service). Additionally, Defendants were served notice of this Motion on December 6, 2019. (Proof of Service of Mot.). Defendants did not respond to the summons or notice of this Motion. Thus, the Court finds that Defendants' default is not due to excusable neglect.

*7.  Policy Favoring Decision on the Merits*

"[D]efault judgments are ordinarily disfavored.  Cases should be decided on their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, where a defendant fails to answer a complaint, "a decision on the merits [is] impractical, if not impossible," *PepsiCo*, 238 F. Supp. 2d at 1177.  As discussed, Defendants elected not to respond to the Summons and Complaint, rendering a decision on the merits impossible.  (Mot. for Clerk to Enter Default).  Thus, this factor weighs in favor of default judgment.

**C.  Remedies**

*1.  Actual and Statutory Damages*

Rutherford seeks statutory damages not less than $4,000 pursuant to California Civil Code § 52(a), and $4,000 for each time he visited the property with architectural barriers.  *Feezor v. Del Taco, Inc.* 431 F. Supp. 2d 1088, 1091 (S.D. Cal. 2005); (FAC at 9, Prayer for Relief.)

Rutherford seeks an additional award of $4,000 in "deterrence damages" pursuant to *Johnson v. Guedoir*, 218 F. Supp. 3d 1096 (E.D. Cal. 2016).  (FAC at 9.) These damages, however, are remedies derived from Rutherford's state law claim under Unruh.  As the Court has declined to exercise supplemental jurisdiction over Rutherford's Unruh claim, the Court **DENIES** Rutherford's request for actual and statutory damages.

*2.  Injunctive Relief*

"To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), [Rutherford] must show that [Defendants have] violated the ADAAG."  *Vogel*, 992 F. Supp. 2d at 1015.  For Title III violations, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ."  42 U.S.C. § 12188(a)(2).  There are no further requirements for relief "when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief," *Vogel*, 992 F. Supp. 2d at 1015 (quoting

*Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011). "Thus, injunctive relief is proper when architectural barriers at [Defendants'] establishment violate the ADA and the removal of the barriers is readily achievable." *Id.*

Here, Rutherford has established a valid Title III discrimination claim under 42 U.S.C. § 12188(a)(2). (FAC ¶¶ 1, 15, 31.) There are several architectural barriers at the Defendants' property that prevented Rutherford from the full and equal enjoyment of Defendants' retail establishment. (FAC ¶¶ 15, 31.) Talat and Natasha Radwan in their capacity as owners of the property, and JJ's Market and Liquor, to the extent of its capacity as a lessee may readily achieve removal of the barriers. *See Vogel*, 992 F. Supp. 2d at 1015.

Injunctive relief is therefore appropriate. Defendants are ordered to remove all architectural barriers identified in Rutherford's Complaint. Specifically, Defendants are compelled to: (1) modify accessible parking spaces to be located on the shortest accessible route to the entrance of the property, pursuant to ADAAG § 208.3.1; (2) modify the curb ramp so that it does not project into vehicular lanes of traffic, parking spaces, or parking access aisles, pursuant to ADAAG § 406.5; (3) modify access aisles for accessible parking spaces such that there is no slope exceeding 1:48 in all directions if access aisles for accessible parking spaces are not in compliance with ADAAG § 502.4. *See Moreno v. La Curacao*, 463 F. App'x 669 (9th Cir. 2011) (finding that because the defendant's "retail establishment" was a public accommodation and the removal of barriers was "readily achievable," the plaintiff was "entitled to injunctive relief"); *Vogel,* 992 F. Supp. 2d at 1015–16 (holding that the patron was entitled to injunctive relief, compelling the store owner to remove all architectural barriers identified in the complaint).

**D. Attorney's Fees and Costs**

Rutherford seeks $4106.00 in attorneys' fees and $538.00 in costs. (Mot. 13–14; Manning Decl. ¶ 8; Manning Decl. Ex. 5 ("Billing Records and Costs"), ECF No. 45-7.)

As Rutherford's ADA claim is meritorious, Rutherford is the prevailing party and may recover attorneys' fees under 42 U.S.C. § 12205. Rutherford may also recover costs as provided in 29 U.S.C. § 1920, FRCP 54(d)(1) and Local Rule 54-2. In an application for default judgment, where attorneys' fees are sought pursuant to a statute, fees are generally calculated according to the schedule provided by the court. C.D. Cal. L.R. 55-3. Attorneys may request fees in excess of the schedule, as Rutherford's have done so here. C.D. Cal. L.R. 55-3. When a party makes such a request, "the court is obligated to calculate a 'reasonable' fee in the usual manner [using the 'lodestar method'], without using the fee schedule as a starting point." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018). The "lodestar" method multiplies the hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts should exclude hours that are excessive, redundant, or not reasonably expended. *Id.* at 434. It is in the court's discretion to determine the reasonableness of the fees requested. *Id.* at 433. A court may consider a number of pertinent factors in determining the reasonableness of an attorneys' fees award. *Langer v. Butler*, No. SA CV 19-0829-DOC (JDEx), 2019 WL 6332167, at *8 (C.D. Cal. Aug. 27, 2019) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors)).[2]

Here, Rutherford's attorneys fail to justify their billing rates, providing neither cases in which court have previously approved their rates nor cases in which courts have approved similar rates for attorneys practicing in similar practice areas in this legal market. Furthermore, while represented by the same firm, Rutherford has filed more than 10 cases within the last twelve months, and is considered a high-frequency litigant

---

[2] The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 539 n.1.

under California law. (*See* Decl. of James Rutherford ¶ 2, ECF No. 38-2.) Rutherford's cases include nearly identical complaints and subsequent filings, with billing records that reflect the use of templates. Notably, Rutherford's attorneys' have filed thousands of ADA cases in this district using "carbon-copy complaints and 'entirely boilerplate' litigation." *Tate v. Deoca*, No. CV 14-08738-SJO (MRWx), 2018 WL 5914220, at *8 (C.D. Cal. July 31, 2018) (citing cases and cautioning against awarding counsel a windfall for such copy-and-paste work). The Court recognizes the time necessary to prepare filings in this matter and to investigate and identify the proper defendants, but this litigation is not particularly complex or laborious, nor has it been litigious as Defendants failed to answer. Indeed, this matter has proceeded in a fairly straightforward matter over only a few months. Finally, nothing indicates that Rutherford's attorneys have been precluded from accepting other employment due to the acceptance of this case.

In light of the redundancy of work, familiarity with Rutherford, expertise in the area of law, and straightforward nature of the case involved for the extensively-trained attorneys, the Court reduces the lodestar by 50% and **awards $2053 in attorney's fees**. *See Langer*, 2019 WL 6332167, at *8 (reducing requested fees by 50% for reasons similar to the above); *Tate*, 2018 WL 5914220, at *8 (same).

Next, the Court accepts Attorney Manning's declaration that Rutherford incurred litigation expenses of $538.00. (*See* Manning Decl. ¶ 8; Billing Record and Costs 1.) Thus, the Court **awards costs of $538.00**.

**CONCLUSION**

For the reasons discussed above, the Court **GRANTS** Rutherford's Motion for Default Judgment, and awards injunctive relief. The Court further **AWARDS $2053 in attorney's fees** and **$538.00 in costs**. The Court will issue Judgment.

**IT IS SO ORDERED.**

February 21, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**